UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

NATCH BLACK,

                              Plaintiff,
                                              9:06-CV-1243
v.                                            (GTS/GHL)

R. ATKINSON, et al.,

                              Defendants.

_____

APPEARANCES:                          OF COUNSEL:

Natch Black, 94-A-7733
Plaintiff *pro se*
Southport Correctional Facility
P.O. Box 2000
Pine City, New York 14871

HON. ANDREW M. CUOMO                   JAMES SEAMAN, ESQ.
Attorney General for the State of New York    Assistant Attorney General
   Counsel for Defendants
The Capitol
Albany, New York 12224

GEORGE H. LOWE, United States Magistrate Judge

## **REPORT-RECOMMENDATION**

This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has

been referred to me for Report and Recommendation by the Honorable Glenn T. Suddaby,

United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).  Plaintiff

Natch Black alleges that four employees of the New York State Department of Correctional

Services ("DOCS")–Ronald W. Atkinson, C. Lansberg, D. Carpenter, and Glenn S. Goord,

1

Commissioner of DOCS–violated his constitutional rights when they confined him to the Special

Housing Unit ("SHU") for 53 days without a hearing after he refused to accept a program

placement.  Currently pending before the Court is Defendants' motion for summary judgment

pursuant to Federal Rule of Civil Procedure 56.  (Dkt. No. 17.)  For the reasons that follow, I

recommend that Defendants' motion be granted.

I.      BACKGROUND

        A.      Summary of Plaintiff's Complaint

        Plaintiff's complaint (Dkt. No. 1) alleges that:

        On May 31, 2006, Plaintiff was on the waiting list for a GED class and an electrical class

at Great Meadow Correctional Facility.  (Dkt. No. 1 at 8, ¶ 1[1].)  Defendant Atkinson, the

Program Committee Chairman, suggested that Plaintiff take a program assignment while he

waited for his educational opportunities to become available.  Plaintiff chose a porter

assignment.  Defendant Sgt.  Lansberg suggested that Plaintiff instead take mess hall duty.  (Dkt.

No. 1 at 8, ¶ 2.)  Plaintiff refused due to his food allergies.  (Dkt. No. 1 at 8, ¶ 3.)  He was also

fearful of working in the mess hall due to the frequent stabbings that occurred there.  (Dkt. No. 1

at 10, ¶¶ 12-13.)  Defendant Lansberg cussed at Plaintiff and told him that if he did not take the

mess hall assignment, he would be sent to the Special Housing Unit ("SHU").  (Dkt. No. 1 at 8, ¶

4.)

        On June 1, 2006, Plaintiff was moved from the general population to the SHU, where he

remained for 53 days.  (Dkt. No. 1 at 8, ¶ 5.)  Plaintiff was not given a hearing before being

placed in the SHU.  *Id*.

---

        [1]      The page numbers for Plaintiff's complaint refer to those assigned by the ECF
system.

Plaintiff wrote to Defendant Carpenter, the Deputy Superintendent for Programs, and informed him that he was eager for his educational opportunities but was willing to take any program other than the mess hall.  (Dkt. No. 1 at 8-9, ¶ 6.)  In response, Plaintiff received a memorandum from Defendant Atkinson informing him that he had been placed on Limited Privilege Status.  (Dkt. No. 1 at 9, ¶ 7.)  This status restricted Plaintiff's yard, television, movies, commissary, pay, telephone, regular library, evening program, and packages privileges.  Under this status, Plaintiff was not allowed to visit the law library or the inmate grievance resolution office.  (Dkt. No. 1, Ex. A.)  This placement was a result of a DOCS policy mandating that inmates who refuse programs be placed on Limited Privilege Status.  (Dkt. No. 1 at 10, ¶ 14.)

On July 10, 2006, Plaintiff was scheduled to meet with the program committee. However, the meeting was cancelled because he had been put on keep-lock status while in the SHU.  (Dkt. No. 1 at 9, ¶ 9.)

On July 19, 2006, Plaintiff met with the program committee.  As he entered the room, Defendant Lansberg said "Nothing changed, you take the mess hall or drag your ass back to [the SHU]."  Plaintiff renewed his objections to the mess hall placement and requested that the committee contact the medical staff.  Defendant Lansberg got on the telephone.  Plaintiff heard him say "Right, right, only if he digests it, right.  Anything that he can't be around?"  (Dkt. No. 1 at 9, ¶ 10.)

After Defendant Lansberg got off the telephone, Plaintiff was brought to the infirmary, where a doctor instructed that Plaintiff not be placed in the mess hall.  (Dkt. No. 1 at 9-10, ¶ 11.)

Plaintiff was released from the SHU on July 22, 2006.  (Dkt. No. 1 at 9-10, ¶ 11.)

Plaintiff requests $25,000 in compensatory damages and $15,000 in punitive damages. (Dkt. No. 1 at 14.)

3

**B.**     **Summary of Grounds in Support of Defendants' Motion**

Defendants argue that (1) Plaintiff's procedural due process rights were not violated when he was confined without a hearing for refusing a program assignment; (2) Plaintiff's placement on Limited Privileges Status does not state an Eighth Amendment conditions of confinement claim; (3) Plaintiff's complaint fails to state a substantive due process claim; (4) Plaintiff's complaint does not state a retaliation claim; (5) Plaintiff's complaint fails to allege facts plausibly suggesting that Defendants Goord or Carpenter  were personally involved in any of the constitutional violations alleged; and (6) Defendants are protected by the doctrine of qualified immunity.  (Dkt. No. 17-14.)

**C.**     **Summary of Plaintiff's Response to Defendants' Arguments**

Plaintiff opposes Defendants' motion for summary judgment and cross-moves for summary judgment in his favor.  (Dkt. No. 19.)  He argues that: (1) Defendants are not entitled to qualified immunity; (2) Defendants violated a direct medical order, dated July 24, 2005, stating that Plaintiff should not work in the mess hall; (3) Defendants violated DOCS directives and 7NYCRR 301.1-301.7 when they placed Plaintiff on Limited Privileges Status in the SHU, failing to consider less restrictive alternatives than confinement, thus violating Plaintiff's due process rights; (4) Defendants' placed Plaintiff on Limited Privileges Status wrongfully, as evidenced by the Inmate Grievance Program Committees ("IRGC") decision to award back pay to Plaintiff for the time he was "wrongfully placed on limited privileges"; (5) Defendants were deliberately indifferent and possessed the requisite culpable mental state to support Plaintiff's Eighth Amendment claims; (6)  Defendants Goord and Carpenter had sufficient personal involvement to warrant inclusion in this action:  Defendant Goord created the DOCS Limited Privileges Status policy  and Defendant Carpenter failed to implement and enforce the policy; and (7) Defendants'

4

motion for summary judgment was filed March 31, 2008 instead of the March 30, 2008 date that was set for motions to be filed, thereby making it untimely.

### D.      Summary of Defendants' Reply

In reply, Defendants argue that: (1) Plaintiff was rightfully placed on limited privileges status because he denied any and all program assignments offered to him, including a position on the utility crew; and he did not have a food allergy of which Defendants were aware; (2) Plaintiff has not stated a conditions of confinement or medical indifference claim under the Eighth Amendment, because Plaintiff cannot medically establish a serious need, as the record shows that Plaintiff does not have food allergies; (3) Defendant Atkinson did not violate any identifiable DOCS policy or procedure when he assigned Plaintiff to Limited Privileges Status; (4)  The IRGC's recommendation was not accepted by the superintendent or CORC and in any case does not assist in determining the occurrence of a constitutional violation; and (5) Defendants' motion for summary judgment was timely pursuant to Federal Rule of Civil Procedure 6.  (Dkt. No. 21-18.)

### E.      Summary of Plaintiff's Sur-Reply

In response to Defendants' reply, Plaintiff argues that: (1) Plaintiff was not offered any alternate programs, including a utility crew assignment, and refused only programs that would affect his health; (2) the records show that Plaintiff has a serious food allergy; (3) Plaintiff received back pay for the time he was on Limited Privileges Status, supporting his claim that he was wrongfully placed on Limited Privileges Status; and (4)  Defendants failed to follow the proper guidelines when they placed him on Limited Privileges Status in the SHU.  (Dkt. No. 23.)

### F.      Summary of Defendants' Sur-sur Reply

In response to the Plaintiff's sur-reply, Defendants argue that Plaintiff received back pay

for a different time period than the period at issue in this case.  (Dkt. No. 26.)

**G.     Summary of Plaintiff's Sur-sur-sur Reply**

In response to the Defendants' sur-sur reply, Plaintiff argues that he was compensated back

pay for the time period at issue in this case.  (Dkt. No. 28.)

## II.     APPLICABLE LEGAL STANDARDS

**A.     Legal Standard Governing Motions for Summary Judgment**

Under Federal Rule of Civil Procedure 56, summary judgment is warranted if "the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In determining whether a

genuine issue of material[2] fact exists, the Court must resolve all ambiguities and draw all

reasonable inferences against the moving party.[3]

If the moving party meets its initial burden of establishing the absence of any genuine issue

of material fact, the nonmoving party must come forward with "specific facts showing that there is

a genuine issue for trial."[4]  The nonmoving party must do more than "rest upon the mere

_____

[2]      A fact is "material" only if it would have some effect on the outcome of the suit.
*Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

[3]      *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) [citation omitted];
*Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) [citation omitted].

[4]      Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made [by a
defendant] and supported as provided in this rule, the [plaintiff] may not rest upon the mere
allegations . . . of the [plaintiff's] pleading, but the [plaintiff's] response, by affidavits or as
otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue
for trial.  If the [plaintiff] does not so respond, summary judgment, if appropriate, shall be
entered against the [plaintiff]."); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*

allegations . . . of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts."[5]   Rather, "[a] dispute regarding a material fact is *genuine* if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[6]

**B.      Legal Standard Governing Motions to Dismiss for Failure to State a Claim**

To the extent that a defendant's motion for summary judgment under Federal Rule of Civil Procedure 56 is based entirely on the plaintiff's complaint, such a motion is functionally the same as a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). As a result, "[w]here appropriate, a trial judge may dismiss for failure to state a cause of action upon motion for summary judgment."   *Schwartz v. Compagnise General Transatlantique*, 405 F.2d 270, 273-74 (2d Cir. 1968) [citations omitted]; *accord, Katz v. Molic*, 128 F.R.D. 35, 37-38 (S.D.N.Y. 1989) ("This Court finds that . . . a conversion [of a Rule 56 summary judgment motion to a Rule 12(b)(6) motion to dismiss the complaint] is proper with or without notice to the parties.").   Moreover, even where a defendant has not advanced such a failure-to-state-a-claim argument on a motion for summary judgment, a district court may, *sua sponte*, address whether a *pro se* prisoner has failed to state a claim upon which relief may be granted.[7]   For these reasons, it

---

*Corp.*, 475 U.S. 574, 585-87 (1986).

[5]      *Matsushita*, 475 U.S. at 585-86; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *see also* Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made [by a defendant] and supported as provided in this rule, the [plaintiff] may not rest upon the mere allegations . . . of the [plaintiff's] pleading . . . .").

[6]      *Ross v. McGinnis*, 00-CV-0275, 2004 WL 1125177, at *8 (W.D.N.Y. Mar. 29, 2004) [internal quotations omitted] [emphasis added].

[7]      The authority to conduct this *sua sponte* analysis is derived from two sources: (1) 28 U.S.C. § 1915(e)(2)(B)(ii), which provides that "the court shall dismiss [a] case [brought by a prisoner proceeding *in forma pauperis*] at any time if the court determines that . . . the action . . . is frivolous or malicious[,] . . . fails to state a claim on which relief may be granted[,] . . . or . . .

is appropriate to briefly summarize the recently clarified legal standard governing Federal Rule of Civil Procedure 12(b)(6) motions to dismiss.

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6). It has long been understood that a defendant may base such a motion on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Federal Rule of Civil Procedure 8(a)(2);[8] or (2) a challenge to the legal cognizability of the claim.[9]

_____

seeks monetary relief against a defendant who is immune from such relief"; and (2) 28 U.S.C. § 1915A(b), which provides that, "[o]n review, the court shall . . . dismiss the [prisoner's] complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted . . . ."

[8]      *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") [citations omitted]; *Princeton Indus., Inc. v. Rem*, 39 B.R. 140, 143 (Bankr. S.D.N.Y. 1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello*, 55 F.R.D. 72, 74 (S.D.N.Y. 1972) ("This motion under Fed. R. Civ. P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed. R. Civ. P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.'").

[9]      *See  Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) ("These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest. . . . In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004) ("There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas*, 308 F.3d 180, 187 (2d Cir. 2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation . . . fails as a matter of law.") [citation omitted]; *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000) (distinguishing between a failure to meet Rule 12[b][6]'s requirement of stating a cognizable claim and Rule 8[a]'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 379 F. Supp.2d 348, 370 (S.D.N.Y. 2005) ("Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim [under Rule 12(b)(6)].") [citation omitted]; *Util. Metal Research & Generac Power Sys.*, 02-CV-

Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim *showing* that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2) [emphasis added].  By requiring this "showing," Rule 8(a)(2) requires that the pleading contain a short and plain statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests."[10]  The main purpose of this rule is to "facilitate a proper decision on the merits."[11]  A complaint that fails to comply with this rule "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims."[12]

---

6205, 2004 U.S. Dist. LEXIS 23314, at *4-5 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint under Rule 8[a]); *accord*, *Straker v. Metro Trans. Auth.*, 331 F. Supp.2d 91, 101-102 (E.D.N.Y. 2004); *Tangorre v. Mako's, Inc.*, 01-CV-4430, 2002 U.S. Dist. LEXIS 1658, at *6-7 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b][6] motion-- one aimed at the sufficiency of the pleadings under Rule 8[a], and the other aimed at the legal sufficiency of the claims).

[10]      *Dura Pharm., Inc. v. Broudo*, 125 S. Ct. 1627, 1634 (2005) (holding that the complaint failed to meet this test) [citation omitted; emphasis added]; *see also Swierkiewicz*, 534 U.S. at 512 [citation omitted]; *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993) [citation omitted].

[11]      *Swierkiewicz*, 534 U.S. at 514 (quoting *Conley*, 355 U.S. at 48); *see also Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) ("Fair notice is that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial.") [citation omitted]; *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) ("[T]he principle function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial.") [citations omitted].

[12]      *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996) (McAvoy, J.), *aff'd*, 113 F.3d 1229 (2d Cir. 1997) (unpublished table opinion); *accord*, *Hudson v. Artuz*, 95-CV-4768, 1998 WL 832708, at *2 (S.D.N.Y. Nov. 30, 1998), *Flores v. Bessereau*, 98-CV-0293, 1998 WL 315087, at *1 (N.D.N.Y. June 8, 1998) (Pooler, J.).  Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history.  *See*, *e.g.*, *Photopaint Technol., LLC v. Smartlens Corp.*, 335 F.3d 152, 156

The Supreme Court has long characterized this pleading requirement under Rule 8(a)(2) as "simplified" and "liberal," and has repeatedly rejected judicially established pleading requirements that exceed this liberal requirement.[13]  However, it is well established that even this liberal notice pleading standard "has its limits."[14]  As a result, several Supreme Court and Second Circuit decisions exist, holding that a pleading has failed to meet this liberal notice pleading standard.[15]

Most notably, in *Bell Atlantic Corporation v. Twombly*, the Supreme Court, in reversing an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1, "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle

---

(2d Cir. 2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.*, 104 F.3d 355 [2d Cir. 1996]).

[13]     *See, e.g.*, *Swierkiewicz*, 534 U.S. at 513-514 (noting that "Rule 8(a)(2)'s simplified pleading standard applies to all civil actions, with limited exceptions [including] averments of fraud or mistake.").

[14]     2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003).

[15]     *See, e.g.*, *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-1974 (2007) (pleading did not meet Rule 8[a][2]'s liberal requirement); *accord*, *Dura Pharm.*, 125 S. Ct. at 1634-1635, *Christopher v. Harbury*, 536 U.S. 403, 416-422 (2002), *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234-235 (2d Cir. 2004), *Gmurzynska v. Hutton*, 355 F.3d 206, 208-209 (2d Cir. 2004).  Several unpublished decisions exist from the Second Circuit affirming the Rule 8(a)(2) dismissal of a complaint after *Swierkiewicz*.  *See, e.g.*, *Salvador v. Adirondack Park Agency of the State of N.Y.*, No. 01-7539, 2002 WL 741835, at *5 (2d Cir. Apr. 26, 2002) (affirming pre-*Swierkiewicz* decision from Northern District of New York interpreting Rule 8[a][2]).  Although these decisions are not themselves precedential authority, *see* Rules of the U.S. Court of Appeals for the Second Circuit, § 0.23, they appear to acknowledge the continued precedential effect, after *Swierkiewicz*, of certain cases from within the Second Circuit interpreting Rule 8(a)(2).  *See Khan v. Ashcroft*, 352 F.3d 521, 525 (2d Cir 2003) (relying on summary affirmances because "they clearly acknowledge the continued precedential effect" of *Domond v. INS*, 244 F.3d 81 [2d Cir. 2001], after that case was "implicitly overruled by the Supreme Court" in *INS v. St. Cyr*, 533 U.S. 289 [2001]).

him to relief." 127 S. Ct. 1955, 1968-69[16] (2007).[17]  Rather than turning on the *conceivability* of an actionable claim, the Court clarified, the Rule 8 "fair notice" standard turns on the *plausibility* of an actionable claim.  *Id*. at 1965-74.

More specifically, the Court reasoned that, by requiring that a pleading "show[] that the pleader is entitled to relief," Rule 8(a)(2) requires that the pleading give the defendant "fair notice" of (1) the nature of the claim and (2) the "grounds" on which the claim rests.  *Id*. at 1965, n.3 [citation omitted].  While this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]."  *Id*. [citations omitted].  More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true.  *Id*. at 1965 [citations omitted].  What this means, on a practical level, is that there must be "plausible grounds to infer [actionable conduct]," or, in other words, "enough fact to raise a reasonable expectation that discovery will reveal evidence of [actionable conduct]."  *Id*.

As have other Circuits, the Second Circuit has repeatedly recognized that the clarified plausibility standard that was articulated by the Supreme Court in *Bell Atlantic* governs *all* claims,

---

[16]     All references to *Bell Atlantic* will cite the Supreme Court Reporter rather than the United States Reports.  The United States Reports version of the case does not include page numbers at this time.

[17]     The Court in *Bell Atlantic* further explained: "The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been adequately stated, it may be supported by showing any set of facts consistent with the allegations in the complaint. . . .  *Conley*, then, described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival."  *Bell Atlantic*, 127 S. Ct. at 1969.

not merely antitrust claims brought under 15 U.S.C. § 1 (as were the claims in *Bell Atlantic*).[18]
The Second Circuit has also recognized that this *plausibility* standard governs claims brought even
by *pro se* litigants (although the plausibility of those claims is be assessed generously, in light of
the special solicitude normally afforded *pro se* litigants).[19]

It should be emphasized that Rule 8's plausibly standard, explained in *Bell Atlantic*, was in
no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v.
Pardus*, in which the Court stated, "Specific facts are not necessary" to successfully state a claim
under Rule 8(a)(2). *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) [citation omitted]. That
statement was merely an abbreviation of the often-repeated point of law–first offered in *Conley*
and repeated in *Bell Atlantic*–that a pleading need not "set out in detail the facts upon which [the
claim is based]" in order to successfully state a claim. *Bell Atlantic*, 127 S. Ct. 1965, n.3 (citing

---

[18]     *See, e.g., Ruotolo v. City of New York,* 514 F.3d 184, 188 (2d Cir. 2008) (in civil
rights action, stating that "To survive a motion to dismiss, a complaint must plead 'enough facts
to state a claim to relief that is plausible on its face.'") [citation omitted]; *Goldstein v. Pataki*, 07-
CV-2537, 2008 U.S. App. LEXIS 2241, at *14 (2d Cir. Feb. 1, 2008) (in civil rights action,
stating that "*Twombly* requires . . . that the complaint's '[f]actual allegations be enough to raise a
right to relief above the speculative level . . . .'") [internal citation omitted]; *ATSI Commc'ns, Inc.
v. Shaar Fund, Ltd.*, 493 F.3d 87, 98, n.2 (2d Cir. 2007) ("We have declined to read Twombly's
flexible 'plausibility standard' as relating only to antitrust cases.") [citation omitted]; *Iqbal v.
Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (in prisoner civil rights action, stating, "[W]e believe
the [Supreme] Court [in *Bell Atlantic Corp. v. Twombly*] is . . . requiring a flexible 'plausibility
standard,' which obliges a pleader to amplify a claim with some factual allegations in those
contexts where such amplification is needed to render the claim *plausible*.") [emphasis in
original].

[19]     *See, e.g., Jacobs v. Mostow*, 281 F. App'x 85, 87 (2d Cir. March 27, 2008) (in pro
se action, stating, "To survive a motion to dismiss, a complaint must plead 'enough facts to state
a claim to relief that is plausible on its face.'") [citation omitted] (summary order, cited in
accordance with Local Rule 32.1[c][1]); *Boykin v. KeyCorp.*, 521 F.3d 202, 215-16 (2d Cir.
2008) (finding that borrower's *pro se* complaint sufficiently presented a "*plausible* claim of
disparate treatment," under Fair Housing Act, to give lenders fair notice of her discrimination
claim based on lenders' denial of her home equity loan application) [emphasis added].

*Conley v. Gibson*, 355 U.S. 41, 47 [1957]).  That statement in no way meant that all pleadings may achieve the requirement of giving a defendant "fair notice" of the nature of the claim and the "grounds" on which the claim rests without ever having to allege any facts whatsoever.[20]  There must still be enough facts alleged to raise a right to relief above the speculative level to a plausible level, so that the defendant may know what the claims are and the grounds on which they rest (in order to shape a defense).

_____

[20]      For example, in *Erickson*, a district court had dismissed a *pro se* prisoner's civil rights complaint because, although the complaint was otherwise factually specific as to how the prisoner's hepatis C medication had been wrongfully terminated by prison officials for a period of approximately 18 months, the complaint (according to the district court) failed to allege facts plausibly suggesting that the termination caused the prisoner "substantial harm."  127 S. Ct. at 2199.  The Supreme Court vacated and remanded the case because (1) under Fed. R. Civ. P. 8 and *Bell Atlantic*, all that is required is "a short and plain statement of the claim" sufficient to "give the defendant fair notice" of the claim and "the grounds upon which it rests," and (2) the plaintiff had alleged that the termination of his hepatitis C medication for 18 months was "endangering [his] life" and that he was still in need of treatment for [the] disease."  *Id*. at 2200.  While *Erickson* does not elaborate much further on its rationale, a careful reading of the decision (and the dissent by Justice Thomas) reveals a point that is perhaps so obvious that it did not need mentioning in the short decision: a claim of deliberate indifference to a serious medical need under the Eighth Amendment involves two elements, i.e., the existence of a sufficiently serious medical need possessed by the plaintiff, and the existence of a deliberately indifferent mental state possessed by prison officials with regard to that sufficiently serious medical need.  The *Erickson* decision had to do with only the first element, not the second element.  *Id*. at 2199-2200.  In particular, the decision was merely recognizing that an allegation by a plaintiff that, during the relevant time period, he suffered from hepatis C is, in and of itself, a factual allegation plausibly suggesting that he possessed a sufficiently serious medical need; the plaintiff need not *also* allege that he suffered an independent and "substantial injury" as a result of the termination of his hepatis C medication.  *Id*.  This point of law is hardly a novel one.  For example, numerous decisions, from district courts within the Second Circuit alone, have found that suffering from hepatitis C constitutes having a serious medical need for purposes of the Eighth Amendment. *See, e.g., Rose v. Alvees*, 01-CV-0648, 2004 WL 2026481, at *6 (W.D.N.Y. Sept. 9, 2004); *Verley v. Goord*, 02-CV-1182, 2004 WL 526740, at *10 n.11 (S.D.N.Y. Jan. 23, 2004); *Johnson v. Wright*, 234 F. Supp.2d 352, 360 (S.D.N.Y. 2002); *McKenna v. Wright*, 01-CV-6571, 2002 WL 338375, at *6 (S.D.N.Y. March 4, 2002); *Carbonell v. Goord*, 99-CV-3208, 2000 WL 760751, at *9 (S.D.N.Y. June 13, 2000).

Having said all of that, it should also be emphasized that, "[i]n reviewing a complaint for

dismissal under Fed. R. Civ. P. 12(b)(6), the court must accept the material facts alleged in the

complaint as true and construe all reasonable inferences in the plaintiff's favor."[21]  "This standard

is applied with even greater force where the plaintiff alleges civil rights violations or where the

complaint is submitted *pro se*."[22]  In other words,  while all pleadings are to be construed liberally

under Rule 8(e), *pro se* civil rights pleadings are to be construed with an *extra* degree of liberality.

For example, the mandate to read the papers of *pro se* litigants generously makes it

appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as

effectively amending the allegations of the plaintiff's complaint, to the extent that those factual

assertions are consistent with the allegations of the plaintiff's complaint.[23]  Moreover, "courts must

---

[21]     *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (affirming grant of
motion to dismiss) [citation omitted]; *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994).

[22]     *Hernandez*, 18 F.3d at 136 [citation omitted]; *Deravin v. Kerik*, 335 F.3d 195, 200
(2d Cir. 2003) [citations omitted]; *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 619 (2d Cir. 1999)
[citation omitted].

[23]     "Generally, a court may not look outside the pleadings when reviewing a Rule
12(b)(6) motion to dismiss.  However, the mandate to read the papers of *pro se* litigants
generously makes it appropriate to consider plaintiff's additional materials, such as his
opposition memorandum."  *Gadson v. Goord,* 96-CV-7544, 1997 WL 714878, at *1, n. 2
(S.D.N.Y. Nov. 17, 1997) (citing, *inter alia*, *Gil v. Mooney*, 824 F.2d 192, 195 [2d Cir. 1987]
[considering plaintiff's response affidavit on motion to dismiss]).  Stated another way, "in cases
where a pro se plaintiff is faced with a motion to dismiss, it is appropriate for the court to
consider materials outside the complaint to the extent they 'are consistent with the allegations in
the complaint.'"  *Donhauser v. Goord*, 314 F. Supp.2d 119, 212 (N.D.N.Y. 2004) (considering
factual allegations contained in plaintiff's opposition papers) [citations omitted], *vacated in part
on other grounds*, 317 F. Supp.2d 160 (N.D.N.Y. 2004).  This authority is premised, not only on
case law, but on Rule 15 of the Federal Rules of Civil Procedure, which permits a plaintiff, as a
matter of right, to amend his complaint once at any time before the service of a responsive
pleading–which a motion to dismiss is not.  *See Washington v. James*, 782 F.2d 1134, 1138-39
(2d Cir. 1986) (considering subsequent affidavit as amending *pro se* complaint, on motion to
dismiss) [citations omitted].

14

construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they

suggest."[24]  Furthermore, when addressing a *pro se* complaint, *generally* a district court "should

not dismiss without granting leave to amend at least once when a liberal reading of the complaint

gives any indication that a valid claim might be stated."[25]  Of course, an opportunity to amend is

not required where the plaintiff has already amended his complaint.[26]  In addition, an opportunity

to amend is not required where "the problem with [plaintiff's] causes of action is substantive" such

that "[b]etter pleading will not cure it."[27]

---

[24]     *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) [internal quotation and citation omitted].

[25]     *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) [internal quotation and citation omitted]; *see also* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires").

[26]     *Yang v. New York City Trans. Auth.*, 01-CV-3933, 2002 WL 31399119, at *2 (E.D.N.Y. Oct. 24, 2002) (denying leave to amend where plaintiff had already amended complaint once); *Advanced Marine Tech. v. Burnham Sec ., Inc.*, 16 F.Supp. 2d 375, 384 (S.D.N.Y.1998) (denying leave to amend where plaintiff had already amended complaint once).

[27]     *Cuoco*, 222 F.3d at 112 (finding that repleading would be futile) [citation omitted]; *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) [citation omitted];  *see, e.g., See Rhodes v. Hoy*, 05-CV-0836, 2007 WL 1343649, at *3, 7 (N.D.N.Y. May 5, 2007) (Scullin, J., adopting Report-Recommendation of Peebles, M.J.) (denying *pro se* plaintiff opportunity to amend before dismissing his complaint because the error in his complaint–the fact that plaintiff enjoyed no constitutional right of access to DOCS' established grievance process–was substantive and not formal in nature, rendering repleading futile); *Thabault v. Sorrell*, 07-CV-0166, 2008 WL 3582743, at *2 (D. Vt. Aug. 13, 2008) (denying *pro se* plaintiff opportunity to amend before dismissing his complaint because the errors in his complaint–lack of subject-matter jurisdiction and lack of standing–were substantive and not formal in nature, rendering repleading futile); *Hylton v. All Island Cob Co.*, 05-CV-2355, 2005 WL 1541049, at *2 (E.D.N.Y. June 29, 2005) (denying *pro se* plaintiff opportunity to amend before dismissing his complaint arising under 42 U.S.C. § 1983 because the errors in his complaint–which included the fact that plaintiff alleged no violation of either the Constitution or laws of the United States, but only negligence–were substantive and

15

However, while this special leniency may somewhat loosen the procedural rules governing the form of pleadings (as the Second Circuit has observed),[28] it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Rules 8, 10 and 12.[29]  Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Rules 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow.[30]

---------------------------

not formal in nature, rendering repleading futile); *Sundwall v. Leuba*, 00-CV-1309, 2001 WL 58834, at *11 (D. Conn. Jan. 23, 2001) (denying *pro se* plaintiff opportunity to amend before dismissing his complaint arising under 42 U.S.C. § 1983 because the error in his complaint–the fact that the defendants were protected from liability by Eleventh Amendment immunity–was substantive and not formal in nature, rendering repleading futile).

[28]     *Sealed Plaintiff v. Sealed Defendant # 1*, No. 06-1590, 2008 WL 3294864, at *5 (2d Cir. Aug. 12, 2008) ("[The obligation to construe the pleadings of *pro se* litigants liberally] entails, at the very least, a permissive application of the rules governing the form of pleadings.") [internal quotation marks and citation omitted]; *see also Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) ("[R]easonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training . . . should not be impaired by harsh application of technical rules.") [citation omitted].

[29]     *See Prezzi v. Schelter*, 469 F.2d 691, 692 (2d Cir.1972) (extra liberal pleading standard set forth in *Haines v. Kerner*, 404 U.S. 519 [1972], did not save *pro se* complaint from dismissal for failing to comply with Fed. R. Civ. P. 8]); *accord, Shoemaker v. State of Cal.*, 101 F.3d 108 (2d Cir. 1996) (citing *Prezzi v. Schelter*, 469 F.2d 691) [unpublished disposition cited only to acknowledge the continued precedential effect of *Prezzi v. Schelter*, 469 F.2d 691, within the Second Circuit]; *accord, Praseuth v. Werbe*, 99 F.3d 402 (2d Cir.1995).

[30]     *See McNeil v. U.S.,* 508 U.S. 106, 113 (1993) ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed . . .  we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Faretta v. California*, 422 U.S. 806, 834, n.46 (1975) ("The right of self-representation is not a license . . . not to comply with relevant rules of procedural and substantive law."); *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *cf. Phillips v. Girdich*, 408 F.3d 124, 128, 130 (2d Cir. 2005) (acknowledging that *pro se* plaintiff's complaint could be dismissed for failing to comply with Rules 8 and 10 if his mistakes either "undermine the purpose of notice pleading []or prejudice the adverse party").

Stated more plainly, when a plaintiff is proceeding *pro se*, "all normal rules of pleading are not absolutely suspended."

### III.   ANALYSIS

#### A.   Timeliness of Defendants' Motion

Plaintiff argues that Defendants' motion is untimely because it was filed on March 31, 2008, one day after the dispositive motion deadline expired.  (Dkt. No. 19 at 13-14.)  Plaintiff is incorrect.  The dispositive motion deadline in this case was March 30, 2008, which was a Sunday. (Dkt. No. 14.)  When the last day of a period for filing papers is a Sunday, the party's time to act is extended to the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(3). Defendants filed their motion on Monday, March 31, 2008, which was before the end of the next day that was not a Saturday, Sunday, or legal holiday.  Therefore, their motion was timely pursuant to Federal Rule of Civil Procedure 6(a).

#### B.   Procedural Due Process

The complaint asserts that Defendants violated Plaintiff's procedural due process rights by limiting his privileges and placing him in the SHU when he refused a work assignment in the mess hall.  (Dkt. No. 1 at 13.)  Defendants argue that (1) Plaintiff was not entitled to procedural due process because he was confined for only 53 days; and (2) even if Plaintiff was entitled to procedural due process, he received all of the process that was due.  (Dkt. No. 17-14 at 1-3.) Defendants are correct.

In order to state a claim for violation of his procedural due process rights, Plaintiff must show that (1) he was deprived of a liberty interest; (2) without due process of law. *Tellier v. Fields*, 280 F.3d 69, 79-80 (2d Cir. 2000).

An inmate has a liberty interest in remaining free from a confinement or restraint where (1) the state has granted its inmates, by regulation or statute, an interest in remaining free from that particular confinement or restraint; and (2) the confinement or restraint imposes "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Tellier*, 280 F.3d at 80; *Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir. 1996). Regarding the first prong of this test, "[i]t is undisputed ... that New York state law creates a liberty interest in not being confined to the SHU." *Palmer v. Richards*, 364 F.3d 60, 64 n.2 (2d Cir. 2004). The issue, then, is whether Plaintiff's confinement in the SHU imposed "an atypical and significant hardship on [him] in relation to the ordinary incidents of prison life."

In the Second Circuit, determining whether confinement in the SHU constituted an "atypical and significant hardship" requires examining "the extent to which the conditions of the ... segregation differ from other routine prison conditions and the duration of the ... segregation compared to discretionary confinement." *Palmer*, 364 F.3d at 64. Where a prisoner has served less than 101 days in segregation, the confinement constitutes an "atypical and significant hardship" only if "the conditions were more severe than the normal SHU conditions[31]." *Palmer*, 364 F.3d at 65. For confinements of an "intermediate duration - between 101 and 305 days - development of a detailed record of the conditions of the confinement relative to ordinary prison

_____

[31]     "Normal" SHU conditions include being kept in solitary confinement for 23 hours per day, provided one hour of exercise in the prison yard per day, and permitted two showers per week. *Ortiz v. McBride*, 380 F.3d 649, 655 (2d Cir. 2004).

conditions is required." *Palmer*, 364 F.3d at 64-65. Segregation lasting more than 305 days implicates a protected liberty interest even if served under "normal" SHU conditions because a term of that length is a "sufficient departure from the ordinary incidents of prison life." *Palmer*, 364 F.3d at 65 (quoting *Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000)).

Here, Plaintiff served 53 days in the SHU. Accordingly, a protected liberty interest is implicated only if Plaintiff was confined under conditions "more severe" than "normal" SHU conditions. The conditions of the Limited Privilege Program, as described in Exhibit A to Plaintiff's verified complaint, are not more severe than normal SHU conditions. Compare *Welch v. Bartlett*, 196 F.3d 389 (2d Cir. 1999)(plaintiff alleged that while in the SHU he received "inadequate amounts of toilet paper, soap and cleaning materials, a filthy mattress, and infrequent changes of clothes); *Palmer*, 364 F.3d at 66 (plaintiff alleged that he suffered unusual SHU conditions such as being deprived of his property, being mechanically restrained whenever he was escorted from his cell, and being out of communication with his family); *Ortiz v. McBride*, 380 F.3d 649 (2d Cir. 2004) (plaintiff alleged that he was confined to his cell for 24 hours a day, not permitted to shower for weeks at a time, denied hygiene products, and denied utensils); *Wheeler v. Butler*, 209 F.App'x 14 (2d Cir. 2006)(plaintiff alleged that he was denied the use of his hearing aids during his SHU confinement). Therefore, Plaintiff was not deprived of a protected liberty interest and I recommend that Defendants' motion for summary judgment of Plaintiff's procedural due process claim be granted.

### C.    Substantive Due Process

The complaint asserts that Defendants violated Plaintiff's right to substantive due process. (Dkt. No. 1 at 13.) Defendants argue that this claim must be dismissed because (1) Plaintiff has not asserted a cognizable liberty interest; and (2) there is no genuine issue of material fact that

Defendants' actions were arbitrary, conscience-shocking, or oppressive.  (Dkt. No. 17-14 at 5-6.)

Defendants are correct.

"Substantive due process protects individuals against government action that is arbitrary,

. . . conscience-shocking, . . . or oppressive in a constitutional sense, . . . but not against

constitutional action that is incorrect or ill-advised." *Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d

Cir. 1994) (internal quotation marks and citations omitted).  Very few conditions of prison life are

"shocking" enough to violate a prisoner's right to substantive due process.  In *Sandin*, the Supreme

Court provided only two examples: the transfer from prison to a mental hospital and the

involuntary administration of psychotropic drugs.  *Sandin*, 515 U.S. at 479 n.4, 484.  Courts have

also noted that a prison official's refusal to obey a state court order to release a prisoner from

disciplinary confinement may violate the prisoner's right to substantive due process. *Johnson v.

Coughlin*, No. 90 Civ. 1731, 1997 WL 431065, at *6 (S.D.N.Y. July 30, 1997); *Arce v. Miles*, No.

85 Civ. 5810, 1991 WL 123952, at *9 (S.D.N.Y. June 28, 1991).

Here, as discussed above, Plaintiff has not asserted a cognizable liberty interest.  Moreover,

Plaintiff has not alleged and the evidence does not raise a genuine issue that Defendants' conduct

was sufficiently arbitrary, conscience-shocking, or oppressive to implicate substantive due

process.  Therefore, I recommend that the Court grant Defendants' motion for summary judgment

dismissing Plaintiff's substantive due process claim.

### D.    Conditions of Confinement

The complaint alleges that Defendants violated Plaintiff's Eighth Amendment right to

adequate prison conditions by limiting his privileges and placing him in the SHU when he refused

a work assignment in the mess hall.  (Dkt. No. 1 at 11-12, ¶¶ 18-27.)  Defendants argue that

placement on Limited Privileges Status is not sufficiently serious to provide a basis for an Eighth Amendment conditions of confinement claim.  (Dkt. No. 17-14 at 3-4.)  Defendants are correct.

Generally, to prevail on a claim of inadequate prison conditions, a plaintiff must show two things: (1) that the conditions of his confinement resulted in deprivation that was *sufficiently serious*; and (2) that the defendant acted with *deliberate indifference* to the plaintiff's health or safety.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Davidson v. Murray*, 371 F. Supp.2d 361, 370 (W.D.N.Y. 2005).  The Second Circuit has held that the restrictions that come with being placed on Limited Privilege Status are not in themselves "sufficiently serious to provide a basis for an Eighth Amendment claim."  *Rivera v. Senkowski*, 62 F.3d 80, 85 (2d Cir. 1995).  Therefore, I recommend that the Court grant Defendants' motion for summary judgment as to Plaintiff's Eighth Amendment conditions of confinement claim.

### E.    Retaliation

The complaint alleges that Defendants placed Plaintiff on Limited Privileges Status for "retaliatory reasons."  (Dkt. No. 1 at 11, ¶ 21.)  Defendants argue that the complaint fails to state a claim for retaliation.  (Dkt. No. 17-14 at 6-7.)  Defendants are correct.

In order to state a cause of action for retaliation, a plaintiff must plead facts plausibly suggesting that (1) the plaintiff engaged in constitutionally protected speech or conduct; (2) the defendant took adverse action against the plaintiff; and (3) there was a causal connection between the protected speech and the adverse action.  *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (citing *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001)).

Here, Plaintiff has not alleged that he engaged in any constitutionally protected speech or conduct, such as filing a grievance.  His complaint does not list retaliation as one of his causes of action and his opposition papers do not discuss retaliation.  Therefore, I recommend that the Court grant Defendants' motion for summary judgment of any retaliation claim.

     **F.**     **Personal Involvement and Qualified Immunity**

Defendants argue that the undisputed facts show that Defendants Goord and Carpenter were not personally involved in any alleged constitutional violations and that all Defendants are entitled to qualified immunity.  (Dkt. No. 17-14 at 8-10.)  In light of my finding that Defendants are entitled to summary judgment dismissing each of Plaintiff's claims on the merits, I decline to address these arguments.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 17) be **GRANTED**; and it is

**RECOMMENDED** that Plaintiff's cross-motion for summary judgment (Dkt. No. 19) be **DENIED**.

**ANY OBJECTIONS to this Report-Recommendation must be filed with the Clerk of this Court within TEN (10) WORKING DAYS, PLUS THREE (3) CALENDAR DAYS from the date of this Report-Recommendation (unless the third calendar day is a legal holiday, in which case add a fourth calendar day)**.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); N.D.N.Y. L.R. 72.1(c); Fed. R. Civ. P. 6(a)(2), (d).

**BE ADVISED** that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material that could have been, but was not, presented to the Magistrate Judge in the first instance.[32]

**BE ALSO ADVISED** that the failure to file timely objections to this Report-Recommendation will **PRECLUDE LATER APPELLATE REVIEW** of any Order of judgment that will be entered. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of H.H.S.*, 892 F.2d 15 [2d Cir. 1989]).

Dated: March 30, 2009
      Syracuse, New York

George H. Lowe
United States Magistrate Judge

---

[32]    *See, e.g., Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137-38 (2d Cir. 1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters,* 894 F.2d 36, 40 n.3 (2d Cir. 1990) (district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate"); *Alexander v. Evans,* 88-CV-5309, 1993 WL 427409, at *18 n.8 (S.D.N.Y. Sept. 30, 1993) (declining to consider affidavit of expert witness that was not before magistrate) [citation omitted]; s*ee also Murr v. U.S.*, 200 F.3d 895, 902, n.1 (6th Cir. 2000) ("Petitioner's failure to raise this claim before the magistrate constitutes waiver."); *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendations are deemed waived.") [citations omitted]; *Cupit v. Whitley*, 28 F.3d 532, 535 (5th Cir. 1994) ("By waiting until after the magistrate judge had issued its findings and recommendations [to raise its procedural default argument] . . . Respondent has waived procedural default . . . objection[].") [citations omitted]; *Greenhow v. Sec'y of Health & Human Servs.*, 863 F.2d 633, 638-39 (9th Cir. 1988) ("[A]llowing parties to litigate fully their case before the magistrate and, if unsuccessful, to change their strategy and present a different theory to the district court would frustrate the purpose of the Magistrates Act."), *overruled on other grounds by U.S. v. Hardesty*, 977 F.2d 1347 (9th Cir. 1992); *Patterson-Leitch Co. Inc. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988) ("[A]n unsuccessful party is not entitled as of right to de novo review by the judge of an argument never seasonably raised before the magistrate.") [citation omitted].